1

2

3

4

5

6                         UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                      * * *

9    ELIZABETH CRUZ, an Individual in her          Case No. 2:14-cv-00173-MMD-CWH
     own Capacity and as Executrix of the
10   Estate of JOSELYN CRUZ,

11                              Plaintiff,                          ORDER

          v.                                      (Plf's Motion for Remand – dkt. no. 5)
12

13   PREFERRED HOMECARE, an Arizona
     Limited Liability Company, et al.,

14                              Defendants.

15

16   **I.    SUMMARY**

17          Plaintiff Elizabeth Cruz, an individual in her own capacity and as executrix of the

18   Estate of Joselyn Cruz, moved for an order remanding this action to state court

19   ("Motion"). (Dkt. no. 5.) For the reasons set out below, the Motion is granted.

20   **II.   BACKGROUND**

21          Plaintiff filed the First Amended Complaint ("FAC") in the Eighth Judicial District

22   Court, Clark County, Nevada, on November 27, 2013. (Dkt. no. 1, Exh. B.) Defendants

23   Preferred Homecare, Trent Wakefield, Yumi Burke and Ashley Miller removed to this

24   Court on January 31, 2014, pursuant to 28 U.S.C. § 1441(a). (Dkt. no. 1.) Plaintiff now

25   moves to remand to state court. (Dkt. no. 5.) Defendants filed an opposition (dkt. no. 11)

26   and Plaintiff filed a reply (dkt. no. 13).

27          The FAC alleges the following facts. Plaintiff's decedent, Joselyn Cruz, was born

28   with gastroschisis. (Dkt. no. 1, Exh. B at 3 ¶¶ 14–15.) As a result, she required regular

home care, which was provided by Preferred Homecare. (*Id.* at 3-4 ¶ 15.) Part of Joselyn's care was the preparation and delivery of Total Parental Nutrition ("TPN") as prescribed by Joselyn's Pediatric Gastroenterologist, Dr. Gremse. (*Id.* at ¶¶ 15, 18-22.) According to Plaintiff, Dr. Gremse would prescribe the TPN by designating an overall volume, then designating a specific percentage of each substance. (*Id.* at 4 ¶ 22.) A Preferred Homecare pharmacist would then calculate these percentages into grams. (*Id.* at ¶ 23.)

The volume of TPN prescribed to Jocelyn changed over time. (*Id.* at 5-6 ¶¶ 24, 26, 28.) Dr. Gremse intended for the percentage of dextrose in the TPN to remain the same with each new prescription, meaning the volume of dextrose should change with each new prescription. (*Id.* at 4 ¶ 22.) However, from October 19, 2011, to November 29, 2011, the volume of dextrose remained consistent even though the total volume of TPN was decreased twice during that period. (*Id.* at 5-6 ¶¶ 26, 28, 29.) This resulted in an overdose of dextrose, causing Joselyn's glucose levels to rise dangerously high. (*Id.* at 6 ¶ 35.) Joselyn was admitted to the hospital for the first time November 27, 2011, due to symptoms caused by elevated glucose levels. (*Id.* at ¶¶ 35–36.) On November 29, 2011, only shortly after being released from the hospital, Joselyn received another TPN treatment. (*Id.* at 7 ¶ 36.) A half hour after beginning the treatment, Joselyn again began having seizures and was rushed to the hospital. (*Id.* at ¶ 37.) However, Joselyn's glucose levels were so high that she went into cardiac arrest before the hospital staff could administer treatment. (*Id.*) Joselyn was pronounced dead on December 2, 2011. (*Id.* at ¶ 38.)

Wakefield, Burke, and Miller are pharmacists employed by Preferred Homecare. (*Id.* at 2 ¶¶ 3-5.) Three hours before the fatal dose of TPN was administered, Miller noted on Preferred Homecare's system that there was a problem with the formula

///

///

///

calculations but no corrective action was taken.[1] (*Id.* at 8 ¶ 44.) Wakefield's name is on the final bag of TPN that was administered and he is listed as the pharmacist who prepared it. (*Id.* at ¶ 47.) Burke initialed this last bag of TPN and was responsible for monitoring Joselyn's blood glucose. (*Id.* at ¶ 46.)

The FAC asserts the following claims: (1) Negligence against Preferred Homecare, Wakefield, Burke and Miller; (2) Breach of Implied Warranty against Preferred Homecare, Wakefield, Burke and Miller; (3) Strict Product Liability against Preferred Homecare, Wakefield, Burke and Miller; and (4) Professional Negligence against Dr. Gremse. (*Id.* at 8-13.)

## III.   DISCUSSION

Defendants' Petition for Removal asserts that this Court has both federal question jurisdiction and diversity jurisdiction. (Dkt. no. 1.) The Court examines both types of jurisdiction and determines that Defendants have established neither.

### A.   Federal Question Jurisdiction

#### 1.   Legal Standard

Any action brought in state court may be removed if it could have been brought originally in federal district court. 28 U.S.C. § 1441(a). However, courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction *must* be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566 (citations omitted). Federal district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal district courts may assert federal "arising under" jurisdiction over state claims that "necessarily

---

[1]According to the FAC, there is a discrepancy between the hospital records and Preferred Homecare's records. (Dkt. no. 1, Exh. B ¶ 45.) The hospital records show that its employees called Preferred Homecare on November 28, 2011, three days before Jocelyn went into cardiac arrest. (*Id.*)

raise a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005). State-law claims give rise to federal question jurisdiction only where "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting [Congress's] federal-state balance." *Gunn v. Minton*, ——U.S. ——, 133 S.Ct. 1059, 1065 (2013). A federal issue is necessarily raised where a state-law claim hinges on its adjudication. *Id.*

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). But "a case may not be removed to federal court on the basis of a federal defense." *Id.* at 393. "The mere presence of a federal issue in a state suit does not, by itself, give rise to federal-question jurisdiction." *Oregon ex rel. Kroger v. Johnson & Johnson*, 832 F. Supp. 2d 1250, 1255 (D. Or. 2011).

## 2.   Analysis

Defendants argue that the Food and Drug Administration ("FDA") has authority over drug compounding pharmacies such as Preferred Healthcare and therefore Plaintiff's "right to relief necessarily depends upon the resolution of a substantial question of federal law." (*See* dkt. no. 11 at 4–5 (citing *Grable*, 545 U.S. at 314).)

In 1938, Congress enacted the Food Drug and Cosmetic Act ("FDCA"), giving the FDA authority to regulate "new" drugs. 21 U.S.C. § 355. In 1997, Congress passed the Food and Drug Administration Modernization Act ("FDAMA"), amending the FDCA, which explicitly gave the FDA limited regulatory power over compounding pharmacies. *See* 21 U.S.C. § 353a. In 2001, the FDAMA was challenged and certain provisions ruled unconstitutional by the Ninth Circuit. *W. States Med. Ctr. v. Shalala*, 238 F.3d 1090, 1093-96 (9th Cir. 2001). Furthermore, the Ninth Circuit found that these unconstitutional provisions were not severable and held the FDAMA invalid in its entirety. *Id.* at 1098.

4

1
2
3
4
5
6
7
8
9
10

The Supreme Court affirmed the unconstitutionality of the specific provisions of the FDAMA without ruling on the severability of the remaining provisions, thereby leaving the Ninth Circuit's decision in place. *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 377 (2002). In 2002, the FDA issued a guidance document regarding certain compounding pharmacies. U.S. Food and Drug Administration, Compliance Policy Guide, 460.200 (repealed Dec. 4, 2013).[2] Finally, on November 27, 2013, Congress passed new legislation that once again created federal regulatory power over compounding pharmacies. *See* 21 U.S.C. § 353a (2013). Thus, between 2002 and November 2013, there was no federal statute in effect that expressly provided for the FDA to regulate compounding pharmacies.

11
12
13
14
15
16
17
18
19
20
21

The events giving rise to this case occurred in 2011, and this action commenced on November 26, 2012, when the initial Complaint was filed in state court. (*See* dkt. no. 1, Exh. A.) During that period, the prior legislation had been found to be unconstitutional and the more recent legislation had not yet been adopted. Defendants do not dispute this, but argue that there is a substantial federal interest at stake because Congress and the FDA "have repeatedly expressed their intent to monitor and oversee compounding pharmacies and the fact that Congress and the FDA have repeatedly fought for their right to do so." (Dkt. no. 11 at 6.) Even assuming that Congressional intent to regulate is enough to demonstrate that the federal issue is substantial to satisfy the third *Gunn* factor, this argument still falls short because Defendants fail to satisfy the first *Gunn* factor — that a federal issue is "necessarily raised."

22
23

Defendants fail to satisfy the first *Gunn* factor because they fail to demonstrate that any of Plaintiff's claims hinge on the adjudication of a federal issue. *Gunn*, 133 S.Ct.

24
25
26
27
28

---

[2]The 2002 "guidance document" was issued as "guidance to the compounding industry and FDA staff on what types of compounding might be subject to enforcement action under current law" in wake of the decisions in the *W. States Med.* cases. 67 FR 39409-02. The guidance document represented "the agency's current thinking on the enforcement of the act in regard to drug products compounded by pharmacies" but did not "create or confer any rights for or on any person" and did not "operate to bind FDA or the public." *Id.* Guidance documents "do not establish legally enforceable rights or responsibilities." 21 C.F.R. § 10.115(d)(1).

at 1065. Defendants merely assert that the Court should determine it has jurisdiction because Plaintiff's claims involve a compounding pharmacy and compounding pharmacies are the subject of FDA regulation and legislation. That argument is wholly insufficient, especially when contrasted with *Grable* and *Gunn*, in which the removing parties demonstrated that plaintiff's *specific* claims hinged on a court's adjudication of a federal issue.

In *Grable*, the Supreme Court found it had federal jurisdiction because "Grable's state complaint . . . has premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law." 545 U.S. at 314-15. Therefore, the Supreme Court found, "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute . . . ." *Id.* at 315. In *Gunn*, the Supreme Court concluded that "resolution of a federal patent question [was] 'necessary' to" the plaintiff's state-law legal malpractice claim. 133 S.Ct. at 1065. To prevail, the plaintiff needed to show that his attorney proximately caused his alleged injury by failing to make an argument about his patent's validity. *Id.* The Court reasoned that this inquiry "require[d] a 'case within a case' analysis of whether, had the argument been made, the outcome of the earlier litigation would have been different." *Id.*

Here, Plaintiff makes absolutely no reference to federal law or regulations in the FAC and Defendants have not demonstrated that resolution of Plaintiff's state law claims (i.e., negligence, strict products liability, breach of implied warranty or professional negligence) will necessarily involve the Court's adjudication of federal issues.[3] Defendants do not point to a single federal statute or regulation that is applicable to *this case*.

///

---

[3]Even if Defendants were able to show that violation of a federal statute is an element of one of Plaintiff's claims, that alone may not be sufficient for this Court to have jurisdiction. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817 (1986).

Defendants have failed to meet their burden of establishing that Plaintiff's claims raise a federal issue. The Court therefore determines Defendants have failed to establish federal question jurisdiction.

## B.   Diversity Jurisdiction

### 1.   Legal Standard

To establish subject matter jurisdiction pursuant to diversity of citizenship, the party asserting jurisdiction must show: (1) complete diversity of citizenship among opposing parties, and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). The party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

Although an action may be removed to federal court only where there is complete diversity of citizenship, "one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Joinder is fraudulent "'[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (*quoting McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). In such a case, the district court may ignore the presence of that defendant for the purpose of establishing diversity. *Morris*, 236 F.3d at 1067.

"The defendant seeking removal is entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339. However, the party asserting fraudulent joinder carries a "heavy burden" of persuasion. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009).

### 2.   Analysis

Plaintiff is a resident of Nevada and the FAC identifies Defendants Wakefield, Burke and Miller as residents of Nevada. (Dkt. no. 1, Exh. B ¶¶ 1, 3-5.)

Defendants' petition for removal argues, however, that Wakefield, Burke and Miller are fraudulently joined because they cannot be held liable for strict product liability

under Nevada law. (Dkt. no. 1 at 6.) Even if that were true, the Court is not aware of, nor have the Defendants demonstrated, any obvious and settled rule in Nevada that prohibits Plaintiff from seeking recovery from the pharmacists that prepared the TPN under a theory of negligence. Defendants suggest, without authority, that Plaintiff can only state a claim of negligence against a pharmacy but not a pharmacy's employees. (Dkt. no. 11 at 9.) Defendants have not met their "heavy burden" of persuading this Court that Plaintiff cannot assert a negligence claim against Wakefield, Burke and Miller according to the settled rules of Nevada. Plaintiff is master of her complaint and while a fact-finder may eventually determine that Preferred Homecare is liable for the acts of Wakefield, Burke and Miller, that has not yet been established.

The Court determines that Defendants have failed to show that Defendants Wakefield, Burke and Miller were fraudulently joined. *See Hamilton Materials*, 494 F.3d at 1206. Consequently, complete diversity does not exist for the purposes of diversity jurisdiction.

As Defendants have failed to meet their burden of establishing federal jurisdiction, this case is remanded to state court.

## IV.   CONCLUSION

It is hereby ordered that Plaintiff's Motion for Remand (dkt. no. 5) is granted. It is therefore ordered that this case be remanded consistent with this opinion.

The Clerk is directed to close this case.

DATED THIS 22nd day of September 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE